| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF RAMSEY | SECOND JUDICIAL DISTRICT |

| | |
|---|---|
| Sunrise Banks, N.A., | Court File No.: _____ |
| Plaintiff, | Case Type: Contract/Tort |
| vs. | |
| Card Express, Inc., and Alan Safahi, | **COMPLAINT** |
| Defendants. | |

Sunrise Banks, N.A. ("Sunrise"), for its Complaint against Card Express, Inc. ("CardEx") and its chief executive officer, Alan Safahi, states and alleges as follows:

## INTRODUCTION

1.  CardEx markets and processes prepaid cards for companies that give the cards to employees and customers as part of loyalty and rewards programs. Sunrise, a national banking association, issues the prepaid cards and CardEx "loads" the cards—meaning that CardEx increased the available balance on each card to fund cardholder transactions.

2.  Under an agreement between the parties, CardEx was to immediately transfer to Sunrise any money it received from companies to fund the prepaid cards.

3.  In the last two weeks, CardEx loaded nearly $3 million onto prepaid cards without funding those cards.

4.  CardEx's actions are continuing to cause Sunrise severe and irreparable damage.

5.     Sunrise seeks immediate and permanent injunctive relief preventing CardEx from: (1) making representations regarding the amount of balances on prepaid cards issued by Sunrise; (2) distributing any prepaid cards issued by Sunrise; (3) representing that CardEx has authority to collect money on behalf of Sunrise or to fund prepaid cards issued by Sunrise; (4) using the Sunrise logo or representing that CardEx is associated with Sunrise.  Sunrise also asks that the Court order CardEx to immediately deliver to Sunrise all funds held in trust for Sunrise and to immediately return to Sunrise all prepaid cards issued by Sunrise in its possession.

## PARTIES

6.     Plaintiff Sunrise is a national banking association with its principal place of business at 200 University Avenue West, Saint Paul, Minnesota 55103.

7.     Defendant CardEx is a California corporation with its principal place of business at 182 Howard St., #409, San Francisco, California 94105.

8.     Alan Safahi is the chief executive officer of CardEx.  Upon information and belief, he is a resident of California.

## JURISDICTION

9.     This Court has jurisdiction over the action because in the agreement governing the parties' rights and obligations, the parties agreed to submit to the jurisdiction of Minnesota courts and to waive any objection to venue in Minnesota.  (*See* Agreement § 13.7.)

## FACTS

**A.     The Relationship Between Sunrise and CardEx.**

10.     Sunrise is a national banking association that is a member of Visa and MasterCard networks through a variety of different programs marketed on a national basis.  Sunrise regularly contracts with third-party companies that assist the Bank in developing and marketing the prepaid card programs.

11.     CardEx markets, distributes, and administers electronic payment processing solutions, including prepaid cards and prepaid card-related systems and services.  In general, CardEx contracts with businesses (known as "Sponsors") to provide prepaid cards for use in corporate incentive, loyalty, and rewards programs.  CardEx works with banks like Sunrise to facilitate the prepaid card programs that it offers to Sponsors.

12.     CardEx and Sunrise entered into the Prepaid Card Program and Processing Agreement ("Agreement"), dated June 21, 2013.  A true and correct copy of the Agreement is attached as Exhibit A to the Affidavit of Brian Tordsen.[1]

13.     In programs established under the Agreement, CardEx entered into Sunrise-approved agreements with Sponsors and provided prepaid cards to Sponsors, often embossed with the Sponsor's logo and design.  At least some of those prepaid cards identified Sunrise as the issuing bank.  Sponsors would determine the guidelines for when certain employees, customers, or sales representatives should be awarded a prepaid card, and would provide the funds to load those cards to CardEx.

---

[1] Sunrise submitted the Affidavit of Brian Tordsen in conjunction with Sunrise's Motion for a Temporary Restraining Order, filed simultaneously with this Complaint.

14. On information and belief, the Sponsor would tell CardEx where to send the prepaid cards and how much money to load onto the cards. The Sponsor would then provide CardEx with funds for the amounts to be loaded on the cards and also pay CardEx agreed-upon fees and costs. CardEx, in turn, was required to transfer any funds that needed to be loaded onto the cards to Sunrise.

**B.   CardEx Must Immediately Deliver Funds Received from Sponsors to Sunrise.**

15. CardEx agreed to immediately transfer to Sunrise all funds that it received from Sponsors that were intended to fund prepaid cards issued by Sunrise. (*See* Agreement § 2.6.)

16. CardEx agreed to be responsible for any failure to deliver to Sunrise funds intended for the funding of prepaid cards. (*See id.* § 3.10.) If such a load failure occurred, CardEx agreed to "fully fund any shortfall." (*Id.*)

17. CardEx agreed to hold "Load Amounts," funds received from Sponsors and designated for prepaid cards, "in trust for the Bank (i.e. statutory trust) and for the benefit of the applicable Cardholder, and no part of such Load Amounts shall be deemed the property of, or asset of, [CardEx]". (*Id.* § 3.11)

18. CardEx provided to Sunrise two sets of daily reports with data regarding the card accounts issued by Sunrise. These reports, which are standard industry reports provided by a processor to an issuing bank, included the funding report (noting dollars loaded to the cards) and a flat data file, which generally notes all processing information available regarding each cardholder account in an unorganized fashion (the "Flat Files").

**C.   CardEx Fails to Meet Its Obligations Under the Agreement.**

19.   CardEx launched its first program under the Agreement on or about October 28, 2013.

20.   But CardEx failed to honor the Agreement, and there were numerous technical issues. Among other things, CardEx failed to provide Sunrise with the ability to view cardholder accounts, as required by the Agreement. (*See id.* at § 3.12 and Exhibit C to the Agreement, § (n)). The Flat Files provided by CardEx also did not consistently match the funding reports, a discrepancy that CardEx urged Sunrise to ignore. CardEx also changed gateway processors (the larger processor through which CardEx connected to the MasterCard system) after Sunrise declined to approve the proposed change. The change to the new gateway processor caused additional balancing, report timing, and reconciliation issues. Moreover, CardEx did not provide Sunrise required access to its systems. CardEx attempted to give Sunrise access via VPN, but this was unacceptable to and unworkable for Sunrise due to security issues surrounding this type of access.

21.   Because of these recurring technical issues with CardEx's reporting, on April 7, 2014, Sunrise sent CardEx a breach of contract notification outlining the contract violations and providing 30 days to cure. CardEx informed Sunrise it was attempting to replace Sunrise with another bank to enable it to move its business away from Sunrise, and Sunrise agreed to work with CardEx to facilitate that transition. On June 26, 2014, CardEx's CEO, Alan Safahi, informed Sunrise that he had a signed agreement with another bank and would be working to move his business to that bank as quickly as possible. CardEx's CEO later told Sunrise that the agreement fell through because the

new bank refused to work with the gateway processor to which CardEx had changed without Sunrise's approval.

22.    Because various breaches were not cured, on August 7, 2014, Sunrise sent a Notice of Termination of the Agreement to CardEx and offered to work with CardEx on an orderly wind-down of the relationship.

23.    After receiving the Notice of Termination, CardEx's chief executive officer, Alan Safahi, attempted to negotiate a long-term wind-down of the relationship with Sunrise through June 30, 2015.

24.    On August 20, 2014, Sunrise informed Mr. Safahi that the proposed wind-down schedule was unacceptable. Sunrise further informed him that CardEx had to find a replacement bank by October 17, 2014, that Sunrise would not approve any new card programs, and that Sunrise would not allow the issuance of any new cardholder accounts under existing programs after February 17, 2015. On September 11, 2014, after further negotiations, Sunrise provided CardEx with a formal written wind-down agreement and advised CardEx that the agreement was the Bank's final offer.

25.    Between the Notice of Termination on August 7, 2014, and Friday, September 19, 2014, CardEx continued to fund prepaid cards and provide daily funding reports to Sunrise.

**D.    CardEx Purports to Fund Pre-Paid Cards with $2.9 Million But Does Not Deliver the Funds to Sunrise.**

26.    CardEx did not provide the required processing reports or funding for loads to prepaid cards on Monday, September 22 or Tuesday, September 23, 2014. By the

morning of Wednesday, September 24, 2014, the Sunrise accounts CardEx funded to support the prepaid cards were overdrawn.

27.     In the morning of September 24, Sunrise demanded the reporting and funding from CardEx. The Flat Files that Sunrise received on September 24 showed that CardEx loaded $2,911,901.56 to new and existing cardholder accounts between September 19 and September 24. These loads were materially and substantially in excess of any prior loads ever made by CardEx in a comparable time period.

28.     On September 24, despite having just loaded an alarming sum of money onto cards, Mr. Safahi told Sunrise that CardEx was out of money and that he was shutting CardEx down, and he referred Sunrise to CardEx's legal counsel.

29.     Even though the Agreement required CardEx to immediately transfer funds to Sunrise to cover these new load amounts, CardEx never delivered any additional funds.

30.     The Flat Files indicated that CardEx represented to Sponsors that $2,911,901.56 had been loaded onto what were in fact unfunded cards. On September 24, Sunrise terminated CardEx's ability to open and load cardholder accounts. To eliminate the risk of additional unfunded loads, Sunrise also terminated already-issued cards.

31.     Almost immediately, Sunrise began receiving calls from cardholders and Sponsors regarding the terminated and unfunded cards, in part because CardEx unilaterally routed its customer-service number to Sunrise's general bank telephone number.

32.     It appears that CardEx committed fraud on the Sponsors and kept and converted funds that were supposed to have been loaded to prepaid cards and delivered to Sunrise. In numerous calls with cardholders, Sunrise has learned that cardholders believe that their prepaid cards had higher balances than they actually did. Sponsors have also reported that the funds they provided to CardEx for loading onto cards are significantly greater than the funds that Sunrise received from CardEx to support CardEx's cards.

33.     CardEx continues to provide erroneous information about card balances to Sponsors and cardholders and to facilitate unfunded rewards redemptions. CardEx maintained a Web site or Web sites, as well as an interactive voice recognition system ("IVR System"), that allowed cardholders to check card balances, review transaction histories, and, in connection with some sponsor programs, redeem rewards points under a CardEx rewards program to buy merchandise or load funds to their prepaid cards. On information and belief, CardEx may be continuing to provide false information to Sponsors regarding the loads to the cards through websites available only to Sponsors or through other means.

34.     On information and belief, CardEx still retains prepaid cards issued by Sunrise.

35.     Sponsors and cardholders have expressed dismay and frustration with Sunrise, and Sunrise's reputation has consequently been damaged. Sunrise's reputation continues to be damaged as CardEx continues to misrepresent prepaid card balances and its association with Sunrise.

36.    CardEx has caused Sunrise significant monetary damages because Sunrise has been forced to spend substantial sums and devote significant resources to respond to CardEx's actions.

37.    In the Agreement, Sunrise retained the right to "obtain interim measures of protection," and seeks such measures of protection with this Complaint.   (Agreement § 13.17.)

## COUNT I – BREACH OF CONTRACT

38.    Sunrise restates and incorporates the preceding allegations as if fully set forth herein.

39.    Sunrise entered into the Agreement with CardEx.

40.    The Agreement is a valid and legally binding contract.

41.    CardEx materially breached its obligations under the Agreement by, among other things, loading prepaid cards with incorrect and unfunded amounts, by failing to maintain funds received by Sponsors in a statutory trust for Sunrise, and by failing to immediately forward funds received from Sponsors to Sunrise.

42.    Sunrise has fully performed its obligations pursuant to the Agreement.

43.    As a consequence of CardEx's material breach of the Agreement, Sunrise has been damaged in an amount to be proved at trial in excess of $50,000 and is entitled to interim relief as requested herein.

## COUNT II – UNJUST ENRICHMENT

44.    Sunrise restates and incorporates the preceding allegations as if fully set forth herein.

45. CardEx collected funds from Sponsors to be held in trust for Sunrise and the for the benefit of cardholders.

46. After Sunrise provided CardEx with the Notice of Termination of the Agreement, CardEx still failed to deliver these funds. When the Agreement was terminated, CardEx had no conceivable basis for failing to deliver the funds.

47. To the extent that Sunrise's breach of contract claim rests upon CardEx's actions after termination of the Agreement or if the Agreement is found to be invalid, Sunrise seeks equitable relief in the alternative to its breach of contract claim.

48. Specifically, CardEx, Safahi, or CardEx's employees have substantially benefitted from failing to deliver the funds that it represented to Sponsors were loaded onto cards.

49. It would be contrary to equity and good conscience for CardEx, Mr. Safahi, or CardEx's employees to retain the benefits that have come to it at the expense of Sunrise.

50. CardEx, Mr. Safahi, or CardEx's employees would be unjustly enriched at Sunrise's expense and the Sponsors' expense if it does not deliver to Sunrise an amount to be proved at trial in excess of $50,000 and Sunrise is otherwise entitled to interim relief as requested herein.

## COUNT III – CONVERSION

51. Sunrise restates and incorporates the preceding allegations as if fully set forth herein.

52.     The Agreement obligated CardEx to hold in trust for Sunrise and the for the benefit of cardholders all funds collected from Sponsors but not transferred to Sunrise. The Agreement further provided that such funds would never be deemed an asset or property of CardEx.

53.     CardEx, Mr. Safahi, or CardEx's employees violated this trust obligation by retaining funds collected from Sponsors.

54.     CardEx, Mr. Safahi, or CardEx's employees are intentionally and unlawfully retaining possession of the funds.

55.     As a consequence of CardEx, Mr. Safahi, or CardEx's employees' unlawful possession of the funds, Sunrise has been damaged in amount to be proved at trial in excess of $50,000 and is entitled to interim relief as requested herein.

### COUNT IV – FRAUDULENT MISREPRESENTATION

56.     Sunrise restates and incorporates the preceding allegations as if fully set forth herein.

57.     Through Web sites and an IVR System that CardEx maintains or has maintained, CardEx has made material representations to cardholders about the funds available in their accounts and their ability to redeem unfunded rewards redemptions.

58.     CardEx's misrepresentations concerning the funds available in cardholders' accounts and cardholders' ability to redeem unfunded rewards redemptions were materially false.

59.     CardEx intended the cardholders to rely on these misrepresentations.

60.     CardEx is subject to liability to Sunrise for these misrepresentations because CardEx intended for the cardholders to repeat the terms of the misrepresentations or communicate their substance to Sunrise to influence Sunrise's conduct.

61.     CardEx's misrepresentations damaged Sunrise in amount to be proved at trial in excess of $50,000 and Sunrise is otherwise entitled to interim relief as requested herein.

## COUNT V – BUSINESS DEFAMATION

62.     Sunrise restates and incorporates the preceding allegations as if fully set forth herein.

63.     CardEx has made and continues to make false and defamatory statements of fact concerning Sunrise and aimed at Sunrise's credit, reputation, and business, including but not limited to misrepresentations concerning the availability of funds on cards that Sunrise properly terminated and the ability of cardholders to redeem unfunded reward redemptions.

64.     CardEx communicated these defamatory statements of fact to cardholders and Sponsors.

65.     CardEx's defamatory statements directly tended to affect the credit, property, business, and reputation of Sunrise in the business community.

66.     CardEx's defamatory statements have damaged Sunrise in an amount to be proved at trial in excess of $50,000 and Sunrise is otherwise entitled to interim relief as requested herein.

## COUNT VI – NEGLIGENCE

67.     Sunrise restates and incorporates the preceding allegations as if fully set forth herein.

68.     As a processor of card transactions, CardEx owed Sunrise a duty of care to reasonably adhere to the professional standards that apply to a card processor. That duty encompassed the provision of processing services necessary to maintain the prepaid cards and cardholder accounts issued by the Bank on the MasterCard network, including card fulfillment, card activation, card balance maintenance, transaction authorization and processing, maintenance of processing records, all connectivity required with the MasterCard network, and other similar processor related services.

69.     CardEx breached that duty of care by, among other things, purporting to load funds onto prepaid cards but failing to provide funds to support those loads, allowing cardholders to access automatic systems to check card balances even after Sunrise terminated the cards, and representing to cardholders erroneous account balance information.

70.     CardEx's breaches of the duty of care damaged Sunrise in an amount to be proved at trial in excess of $50,000 and Sunrise is otherwise entitled to interim relief as requested herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Sunrise prays that this Court enter judgment in its favor and against CardEx as follows:

1.    Entering a temporary restraining order and preliminary and permanent injunctions preventing CardEx from:

    a.    Making any representations regarding the amount of balances on prepaid cards issued by Sunrise. This includes maintaining, operating, or causing or facilitating in any way the maintenance or operation of Web sites or Interactive Voice Response ("IVR") systems that allow cardholders to check card balances, review transaction histories, or to redeem rewards points under a CardEx rewards for purportedly loading funds to prepaid cards issued by Sunrise.

    b.    Distributing any prepaid cards issued by Sunrise.

    c.    Representing that CardEx has any authority to collect money on behalf of Sunrise or to fund prepaid cards issued by Sunrise.

    d.    Using Sunrise's logo or representing that CardEx is associated with Sunrise in any way.

2.    Ordering CardEx to return to Sunrise all prepaid cards issued by Sunrise.

3.    Ordering CardEx to deliver to Sunrise any and all amounts held in trust for Sunrise.

4.    Granting any other relief that the Court deems just and equitable.

**JURY TRIAL DEMANDED**

Dated: October 3, 2014            **FAEGRE BAKER DANIELS LLP**

/s/ Jane E. Maschka
Charles F. Webber (#215247)
D. Charles Macdonald (#151385)
Jane E. Maschka (#0389130)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7000

**ATTORNEYS FOR PLAINTIFF
SUNRISE BANKS, N.A.**

## ACKNOWLEDGMENT REQUIRED BY
## MINN. STAT. § 549.211, SUBD. 1

The undersigned hereby acknowledges that pursuant to Minn. Stat. § 549.211, subd. 3, sanctions may be imposed if, after notice and a reasonable opportunity to respond, the Court determines that the undersigned has violated the provisions of Minn. Stat. § 549.211, Subd. 2.

Dated: October 3, 2014                    **FAEGRE BAKER DANIELS LLP**


/s/ Jane E. Maschka
Charles F. Webber (#215247)
D. Charles Macdonald (#151385)
Jane E. Maschka (#0389130)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7000

**ATTORNEYS FOR PLAINTIFF**
**SUNRISE BANKS, N.A.**

US.54959079.05